IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLY A. HART, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-cv-1244-MEF |
| | ) | |
| GLAXOSMITHKLINE, PLC, | ) | (WO- Not Recommended for Publication) |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a former pharmaceutical sales representative for Defendant, brings this action alleging discrimination on the basis of her sex and age. This cause is now before the court on the Defendant's Motion for Summary Judgment (Doc. # 10). Upon a thorough review of the submissions in support of and in opposition to this motion and the applicable law, the court finds that the motion is due to be GRANTED.

## I. JURISDICTION AND VENUE

Jurisdiction over this matter is properly asserted pursuant to 28 U.S.C. §1331 and §1343. The parties do not contest personal jurisdiction or venue and the Court finds adequate allegations of both.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

2

Indeed, a party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts[1] showing that there is a genuine issue for trial. *Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir. 1990).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  After the

---

[1]  Rule 56(e) makes it plain that affidavits submitted in support of or opposition to a motion for summary judgment

> shall be made *on personal knowledge*, shall set forth such facts as would be *admissible in evidence*, and shall *affirmatively show that the affiant is competent to testify to the matters stated therein*.

Fed. R. Civ. P. 56(e) (emphasis added).  It is clear that the Federal Rules of Civil Procedure also provide for the submission of deposition testimony in support of or in opposition to motions for summary judgment.  Such testimony is also required to be made on personal knowledge from a witness competent to testify on the matters stated and to set forth facts as would be admissible in evidence.  *See, e.g., Rowell v. Bellsouth Corp.,* 433 F.3d 794, 799-800 (11th Cir. 2005) (affirming a decision granting an employer's motion for summary judgment and explaining that deposition testimony from plaintiff could only be considered if it could "be reduced to an admissible form" at trial); *Randle v. LaSalle Telecomms.,* 876 F. 2d 563, 570 n.4 (7th Cir. 1989); *Home Oil Co. v. Sam's East, Inc.,* 252 F. Supp. 1302, 1308 (M.D. Ala. 2003).  The requirements of Rule 56 make it plain that affidavits or depositions which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper.  *See, e.g., Thomas v. Ala. Council on Human Relations, Inc.,* 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003); *Story v. Sunshine Foliage World, Inc.,* 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000).  *Accord, Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000).  Moreover, hearsay which is not within an exception is not evidence that could be reduced to an admissible form and cannot defeat a properly supported motion for summary judgment. *See, e.g., Rowell,* 433 F.3d at 800; *Macuba v. Deboer,* 193 F.3d 1316, 1324-25 (11th Cir. 1999).

nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## III.  FACTS

The Court has carefully considered all appropriate deposition excerpts[2] and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to Plaintiff, the non-moving party, establish the following material facts:

Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline PLC ("Defendant") hired Plaintiff Kimberly A. Hart ("Plaintiff") as a pharmaceutical sales representative in 1989.  She worked for Defendant in the Dothan, Alabama area.  During her employment with Defendant, Plaintiff was never suspended or demoted and never had her

---

[2]  Part of the evidence on which Plaintiff seeks to rely to oppose Defendant's Motion for Summary Judgment is not discussed in this Memorandum Opinion and Order.  Plaintiff testified at her deposition that she was told by various co-workers that Milton Ambrose, the regional vice president for Plaintiff's area, made certain statements.  The alleged statements included reference to Plaintiff being too old to be pregnant and come back to work and negative comments about Plaintiff's miscarriage and her reaction to it.  Additionally, Plaintiff recounted alleged statements by Ambrose derogating women employees who express breast milk during lunch hours so they could later feed their babies as lacking commitment to their work.  Finally, Plaintiff heard from some co-workers that Ambrose had said that Plaintiff had prevented him from making the top sales spot in the company in 2004.  Plaintiff has no first-hand knowledge of these alleged statements.  She offers no affidavit or deposition testimony from anyone with first-hand knowledge of the alleged statements.  Accordingly, the evidence before the court constitutes double hearsay.  Given the procedural posture of this case, Plaintiff has failed to provide the court with proper evidence regarding these issues and the court may not consider double hearsay in opposition to summary judgment.

pay reduced.   Indeed, during the last ten years of her employment, Defendant took no disciplinary actions against Plaintiff.  In December of 2001, Plaintiff voluntarily decided to take a part-time position so that she could spend more time with her family.  In order to work part-time, Plaintiff had a job-share arrangement.

In December of 2003, Beth Willis ("Willis") became Plaintiff's new District Manager. At this same time, Plaintiff's Regional Manager changed to Milton Ambrose ("Ambrose"). When Willis and Ambrose took over Plaintiff's sales area there were five sales representatives and one vacant position in Plaintiff's "Pod"[3]: Plaintiff, Mickie Thornell ("Thornell") who was Plaintiff's part-time job share partner; Gabe Sanders ("Sanders"); Bob Heckathorne ("Heckathorne"); and Jason Wulfurs ("Wulfurs").  By May 2004, Plaintiff was the only remaining sales representative from this Pod.  Heckathorne, Wulfers, and Thornell resigned during a compliance investigation into whether company policies had been violated regarding the proper protocol for calling on doctors.  Sanders also resigned.  Plaintiff asserts that all of the sales representatives in her Pod had problems with Willis' supervision.  All of the other sales representatives from Plaintiff's Pod were under the under the age of 40 and three of the four were male.

Defendant required its sales representatives to be working in their assigned territories making calls on assigned physicians from 8:30 a.m. until 5:00 p.m.  On December 1, 2003, Ambrose sent all of the sales representatives and District Managers in his region a

---

[3]  A Pod is a group of sales representatives assigned to a geographic territory.

memorandum regarding the company's policy regarding business hours.  This memorandum

provided that:

> Everyone is expected to be in the territory from 8:30 a.m. to
> 5:00 p.m.  You should be calling on your first customer by 8:30
> a.m. and leaving your territory no earlier than 5:00 p.m.  We
> acknowledge that all of you are doing breakfast, lunch, or dinner
> meetings with customers.  In addition, some of you are working
> on weekends preparing for conferences or special programs, etc.
> If you are doing extra meetings and going above and beyond the
> call of duty, your manager may grant flexibility around the 8:30
> a.m. to 5:00 p.m. expectation.  But don't lose sight that this is a
> profession, not a job.

This articulation of the policy on working hours raised some questions in Plaintiff's mind.

On January 6, 2004, Willis had a meeting with members of her Pod, including Plaintiff.

During this meeting, Plaintiff asked Willis[4] about what Plaintiff should do when, as might

happen on rare occasion, she had to drop her children off at school and cannot get on the road

until 7:30 a.m., which would make her about thirty minutes late to her first sales call in the

farthest part of her territory, which was at that time Andalusia, Alabama.  According to

Plaintiff, Willis asked her how often it happens, but did not otherwise respond to her question

at that meeting.

It is undisputed that on the next day, January 7, 2004, Ambrose was scheduled to meet

with the Pod members as a part of his introduction to members in his region.  Ambrose

addressed the sales associates talking about himself and his family.  He entertained a few

---

[4]  This was only the third time Plaintiff had ever met Willis.

6

questions.  He spent the majority of the meeting talking about his view of how business should be done.  He discouraged sales associates from introducing themselves saying he would never remember their names anyway.  Someone asked if he fired sales representatives and he responded that he did fired District Managers who didn't fire sales representatives.

After the meeting with the Pod was finished, Willis asked Plaintiff if she could meet with Ambrose and Willis.  Plaintiff asked what was going on and inquired if she was losing her job.  Willis replied "You'll see, or we'll talk about it."  During the meeting between Willis, Ambrose, and Plaintiff, Ambrose told Plaintiff she had made a terrible error in judgment and that she could have potentially cost the company millions of dollars.  Ambrose indicated that the legal and human resources departments had been consulted and were behind them.  Ambrose explained that if Plaintiff refused to work the required hours and was not fired, then if someone else who was not working the required hours did get fired the fired employee could file suit.  Plaintiff responded that she had not refused to work and that she had worked the company's required hours.  Willis and Ambrose said that there was a strong possibility that Plaintiff would lose her job over the question she had asked.

Plaintiff was very upset and not feeling well during this meeting.  She had not eaten for hours and was pregnant.  At some point during the meeting, she announced that fact to Ambrose and Willis, who had not known prior to the meeting that Plaintiff was pregnant.  After learning that Plaintiff was pregnant and not feeling well Ambrose and Willis stopped the meeting and told Plaintiff to go home.  On January 8, 2004, Plaintiff saw her doctor and

learned that there was no fetal heartbeat.  Plaintiff applied for and was granted short-term disability leave.

On January 27, 2004, Plaintiff's doctor released her to return to work, which she did shortly thereafter.  On Plaintiff's first day back from short-term disability leave, Willis gave Plaintiff a coaching and counseling session.  Plaintiff was not disciplined for having asked the question about working hours in the presence of other Pod members.  She was advised that she was expected to be selling between 8:30 a.m. and 5:00 p.m. on each day she was scheduled to work.  Willis emphasized the importance of Plaintiff staying within her weekly routing.  The letter memorializing the counseling session stated that:

> Understand if you cannot live up to these expectations around working hours, it may lead to discipline.  If you need a week to make arrangements to make sure that you are within the company guidelines for selling hours, please call me first to discuss.  As with everyone in the district, I expect you to follow GSK and Regional Guidelines.

> Please consider our discussion very seriously.  These standards of performance are expected by everyone in the district, and it is unfair to the district and the Company when these expectations are breached.

During the months of March and April of 2004, all of the other sales representatives in the Pod ceased to be employed by Defendant.  Plaintiff's job share partner took short-term disability leave.  Other members of the Pod, quit or were fired.  This placed Plaintiff in a situation she found extremely stressful.  Plaintiff admits that Willis was trying to find someone to fill a part-time position to replace Plaintiff's job share partner.

8

Defendant's employees receive performance evaluations.  In May of 2004, Willis provided Plaintiff with her annual review.  Plaintiff does not contend that there was anything discriminatory about her annual review.  In addition to performance evaluations, District Sales Managers travel on the route with the sale representatives under their supervision on a regular basis.  At the end of each such trip, the District Sales Manager will provide the sales representative with guidance on things they are doing well and things they could improve in the form of a Field Contact Report.  This is not a performance review, but rather it is a coaching tool used to improve performance.  Willis conducted only two field contact visits with Plaintiff: one in April of 2004 and one in June of 2004.  Plaintiff does not complain about the April Field Contact Report, but she does complain about the June Field Contact Report.  On June 22, 2004, Willis met Plaintiff for a field contact report.  At this meeting, Willis stated that she had hired someone to fill an open, full-time position in the Pod, but asked Plaintiff if she wanted to take the position.  According to Plaintiff, Willis told her that she would have to either take a full-time position or leave without severance.  Willis also gave Plaintiff a low rating on one of the performance elevation categories.  Plaintiff had never before received such a poor evaluation.  Willis also indicated in the field contact report that Plaintiff had been out of her routing and that she had been late for two meetings.  Plaintiff disputes having been out of her routing and offers explanations for her tardiness to the meetings.

On June 25, 2004, Plaintiff emailed Willis and accepted the full-time position which

was to begin on July 12, 2004.  Since her miscarriage, Plaintiff had been struggling with depression and anxiety.  She had been receiving treatment from a psychologist.  Her psychologist recommended against her returning to full-time employment and wrote a letter to that effect to Defendant's nurse case manager for Plaintiff.  In response to this letter, Defendant's disability management department contacted Plaintiff to see if she was requesting some type of reasonable accommodation through the psychologist's letter.  Plaintiff did not request any accommodation.

Plaintiff returned to work on a full-time basis in July as planned.  On July 20, 2004, Plaintiff emailed a vacation request to Willis.  On July 26, 2004, Willis denied the request.  On July 26, 2004, Plaintiff requested and received short-term disability leave because of anxiety and depression.  While receiving short-term disability benefits from Defendant, Plaintiff was actively seeking employment from other companies.  Plaintiff's doctor released her to return to work on October 25, 2004, the first business day after Plaintiff's short-term disability leave benefits were to expire.  Plaintiff requested and received permission to work a reduced schedule upon her return to work.  In fact, Plaintiff never returned to work with Defendant after exhausting her leave. Instead, Plaintiff submitted a letter of resignation on October, 27, 2004.  At the time of her resignation, Plaintiff had already accepted a position with another pharmaceutical company.

At the time of her resignation, Plaintiff was a female over the age of forty.  She claims to have been replaced by persons under the age of forty, but does not identify the exact age

of those person.

# IV.  DISCUSSION

In this action Plaintiff claims both sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq.* ("Title VII") and age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Before addressing the specific merits of her claims, the court will provide a brief overview of the applicable legal analyses for each claim.

## A.  Analysis of Sex Discrimination Claims

Title VII makes it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment," because of such individual's race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2(a).  "Courts have uniformly read this language to require a plaintiff suing under § 2000e-2(a) to establish, as a part of [her] prima facie case, that [s]he suffered so-called "adverse employment action."  *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1238 (11th Cir. 2001).

> [T]o prove adverse employment action under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Id.* at 1239.

11

Because Plaintiff relies on circumstantial[5] evidence to establish her disparate-treatment claim, we test the sufficiency of that claim by applying the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*). Under this framework, a plaintiff first must show an inference of discriminatory intent, and thus carries the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. The plaintiff must establish a *prima facie* case of discrimination by presenting evidence that she was a member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class.

The plaintiff's successful assertion of a *prima facie* case "creates a rebuttable presumption that the employer unlawfully discriminated against her." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)). If the plaintiff successfully demonstrates a *prima facie* case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. *See Joe's Stone Crabs*, 296 F.3d at 1272. "Should the employer meet its burden of production, the presumption of

---

[5] In this case, Plaintiff has made no attempt to present her case through statistical evidence, nor does Plaintiff argue that any statements by either Willis or Ambrose regarding her sex or age constitute direct evidence of discriminatory intent. The test set forth by the Eleventh Circuit for whether comments constitute direct evidence is a rigorous one, and the court finds that the statements on which Plaintiff relies do not constitute direct evidence.

discrimination is rebutted, and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Id.* at 1272-73 (quoting *Burdine*, 450 U.S. at 255-56). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *Id.* at 1273.

**B.  Analysis of Age Discrimination Claims**

The ADEA makes it "unlawful for an employer...to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

> When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993). The courts have often recognized that this inquiry implicates analyses of the mental processes of employers for which there is seldom eye-witness testimony. *Id.* Consequently, the courts have applied some variation on the framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny to analyze ADEA cases brought primarily on circumstantial evidence. *Reeves,* 530

13

U.S. at 141 (collecting cases); *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir.), *cert. denied,* 525 U.S. 962 (1998). Thus, an employee bringing a claim under the ADEA must initially establish a *prima facie* case of discrimination through one of three methods: by presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas* and its progeny, or by introducing statistical evidence of discrimination. *See, e.g., Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995).

To establish a discrimination claim by circumstantial evidence using the *McDonnell Douglas* framework, the employee has the initial burden of showing, by a preponderance of the evidence, a *prima facie* case of the proscribed practice. *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied,* 488 U.S. 1004 (1989). The essence of the *prima facie* case is that the employee presents circumstantial evidence sufficient to generate a reasonable inference by the fact finder that the employer used prohibited criteria in making an adverse decision about the employee. If established, the *prima facie* case raises a rebuttable presumption that the employer is liable to the employee. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981). "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997).

Once a plaintiff establishes the requisite elements of the *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the

14

challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d at 1564 (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)). The employer's burden is "exceedingly light." *Holifield,* 115 F.3d at 1564. This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See, e.g., Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d 1314, 1321 (M.D. Ala. 2001).

If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination. *See, e.g., Holifield,* 115 F.3d at 1565; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff "has the opportunity to discredit the defendant's proffered reasons for its decision"). Thus, once the employer articulates a legitimate, non-discriminatory reason, the burden returns to the employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F. Supp. 2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256;

*Combs,* 106 F.3d at 1528.  A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  *Reeves,* 530 U.S. at 148.

## C.  Plaintiff's Claims

In support of its motion for summary judgment, Defendant first contends that Plaintiff cannot establish a prima facie case of either sex or age discrimination because she cannot identify any actionable adverse employment action taken against her.  As previously stated, both of Plaintiff's claims require her to present evidence that she was subjected to an adverse employment action.  If she cannot do so, Defendant is entitled to judgment as a matter of law. In response to Defendant's motion for summary judgment, Plaintiff has identified two adverse employment actions which she claims to have suffered at the hands of her former employer on account of either her sex or her age: (1) constructive discharge and (2) failure to be compensated for certain sales.  The court will address each in turn.

### 1.  Constructive Discharge Claim

To satisfy the requirement of showing that she suffered an adverse employment action, Plaintiff claims that she was constructively discharged from her employment with Defendant.  The complaints that Plaintiff makes about her unhappiness with having to return to full time work, feeling that she was unfairly criticized, and working under conditions that she found unpleasant are simply not enough to satisfy the requirements in this circuit for establishing a constructive discharge.

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (alteration in original; citation omitted). "'[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" *Williams v. Russell Corp.,* 218 F. Supp. 2d 1283, 1299 (M.D. Ala. 2002) (citing *Matvia v. Bald Head Island Management, Inc.*, 259 F.3d 261, 273 (4th Cir. 2001) (citations omitted); *Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997), *cert. denied*, 523 U.S. 1004 (1998). "Part of an employee's obligation to be reasonable is an obligation not to assume the worse, and not to jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987).   The threshold for establishing that an employee has been constructively discharged "is quite high." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001)  (holding that being berated in public was not sufficient to show constructive discharge). *Compare, Fitz*, 348 F.3d at 977-78 (being reprimanded and hearing from coworkers of management's intent to fire were insufficient to show constructive discharge) and *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001) (receiving poor evaluations was not sufficient to establish constructive discharge) *with Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1015 (11th Cir. 1994) (holding court's finding of constructive discharge was supported by evidence of plaintiff being placed on probation,

receiving unjustified work evaluations, and being repeatedly screamed at so that supervisor's "spit was flying in [plaintiff's] face") and *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 552 (11th Cir. 1997) (holding that summary judgment for defendants was inappropriate where plaintiff was relieved of all responsibilities and was given a chair with no desk, and other employees were instructed not to speak to her).

Hart has failed to offer sufficient evidence to show that she was constructively discharged. Her working conditions were not objectively intolerable. Hart has established that she was threatened with disciplinary action including the termination of her employment if she violated certain company policies. Nevertheless, even if she were likely to be fired *if* she violated company policies, she has not shown that she was being subjected to such intolerable conditions that she needed to quit immediately. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 806 (11th Cir.2005) ("The fact that one of the possible outcomes is that he would lose his job alone is not sufficient to establish the intolerable conditions sufficient to justify a finding of constructive discharge ⋯"). Additionally, Hart has established that she receiving training or counseling which she believed to have constituted disciplinary action. However, the mere act of disciplining an employee, especially where, as here, the discipline was reasonable, does not create intolerable working conditions sufficient to create a constructive discharge.

### 2. Failure to Compensate Claim

In Plaintiff's deposition testimony, she testified that Defendant did not compensate

her for sales in zip code 36301 for a certain time frame.  The facts relevant to this claim are not in dispute and will be summarized for the sake of clarity.  Defendant has a computer system known as a Total Territory Universal Tool ("TTUT") which assigns each doctor to a particular sales representative based upon zip code.  Defendant makes it plain to its sales representatives that it is the responsibility of each sales representative to review their assigned territory and make sure they are calling on doctors assigned to the sales representative.  In December of 2003, Willis provided each sales representative under her supervision, including Plaintiff, with the applicable zip code alignment.  Nevertheless, Hart admits that through her oversight she had been calling on some doctors that were not in her assigned zip codes.  As a result, her sales figures did not reflect the sales generated by her contacts with these doctors.  In April of 2004, Hart discovered this error and talked to Willis about it.  It is undisputed that Willis and Ambrose made a request on Plaintiff's behalf that an adjustment be made to her sales figures.  Willis also requested that the zip codes be reassigned to Plaintiff so she could continue to call on certain high producing doctors in those areas.  Willis learned that it was too late to make the adjustments to Plaintiff's sales figures.  Plaintiff argues that in the past when she was under the supervision of a different supervisor, there was one occasion she was able to get an adjustment to her figures when there was an error.

Defendant contends that Plaintiff cannot rely on the foregoing facts relating to the compensation issue to establish an adverse employment action because she failed to include

this claim in either her Charge of Discrimination or her Complaint.  Defendant also faults Plaintiff for failing to identify this as a basis for her belief that she was a victim of discrimination during her deposition testimony.

The court agrees that Plaintiff is precluded from asserting this claim.  Like other complaints filed pursuant to the Federal Rules of Civil Procedure, Plaintiff's Complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).  "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is *and the grounds upon which it rests.*'" *Swierkiewicz,* 534 U.S. at 512 (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957); emphasis added).  The court has carefully reviewed Plaintiff's Complaint (Doc. # 1).  While the Complaint provides Defendant with fair notice that Plaintiff claims to have suffered age and sex discrimination at its hands, it utterly fails to provide any hint that such a claim is in any way grounded upon the facts relating to the failure to compensate Plaintiff for sales in zip code 36301 during the relevant period.  Instead, the Complaint is quite specific about a different factual basis relating to the events which support her constructive discharge claim.  Because the court finds that Plaintiff has failed to properly plead the claim, the court finds that Plaintiff may not bring a claim in this action for failure to compensate her for sales in zip code 36301.[6]  In the alternative, the court is satisfied that

---

[6] Because of this holding, the court need not and does not address whether Plaintiff is precluded from litigating such a claim by her failure to exhaust her administrative remedies with the EEOC with regard to this claim.

the undisputed facts establish that Defendant is entitled to judgment as a matter of law on this claim. First, the court cannot find that Plaintiff has established all of the elements of a *prima facie* case with respect to such a claim.  Second, the court cannot find that any reasonable jury viewing the evidence relating to the claim in the light most favorable to Plaintiff could find that Defendant's proffered reasons for its actions are a pretext for either age or sex discrimination.

## VI.  CONCLUSION

Plaintiff has failed to establish a *prima facie* case of either sex discrimination or age discrimination.  Specifically, she has failed to establish that she suffered an adverse employment action at Defendant's hands.  For this reason, Defendant is entitled to summary judgment on all of Plaintiff's claims.  Accordingly, it is hereby ORDERED as follows:

(1)  Defendant's Motion for Summary Judgment (Doc. # 10) is GRANTED.

(2)  All of Plaintiff's claims and this case are DISMISSED WITH PREJUDICE.

(3)  The pretrial and the trial scheduled in this matter are CANCELLED.

This court will enter a separate final judgment taxing costs.

DONE this the 14th day of August, 2006.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE